**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **HENRY DAVIS,** | § | |
| **Fed. Reg. No. 36227-044,** | § | |
| **Movant,** | § | **EP-13-CV-342-KC** |
| | § | **EP-09-CR-2453-KC-4** |
| **v.** | § | |
| | § | |
| **UNITED STATES OF AMERICA,** | § | |
| **Respondent.** | § | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Movant Henry Davis's corrected motion under 28

U.S.C. § 2255 to vacate, set aside, or correct a sentence (ECF No. 347-1).[1]  In his motion, Davis,

a federal prisoner at the Satellite Prison Camp in Marion, Illinois, with a projected release date of

June 30, 2020, challenges his conviction and 151-month sentence for conspiracy to possess with

the intent to distribute five kilograms or more of cocaine.  Davis alleges his trial and appellate

counsel provided constitutionally ineffective assistance.[2]  The United States of America ("the

Government") counters Davis fails "to demonstrate that his attorneys' actions were ineffective or

that [he] was prejudiced."[3]  The Government argues the Court should therefore deny Davis's

motion.  Davis replies he asserted in his motion sufficient facts to support a conclusion that his

counsel provided ineffective assistance.[4]  Upon reviewing the record and for the reasons

---

[1] "ECF No." in this context refers to the Electronic Case Filing number for documents docketed in EP-09-CR-2453-KC-4.  Where a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the latter page numbers.

[2] Mot. Vacate 5–8, ECF No. 347-1, Nov. 25, 2013.

[3] Gov't's Resp. Mot. Vacate 20, ECF No. 356, Feb. 3. 2014.

[4] Reply 1–8, ECF No 366, Mar. 10, 2014.

discussed below, the Court concludes that Davis has failed to establish an entitlement to § 2255 relief. The Court will accordingly deny his motion and dismiss his civil cause with prejudice. The Court will additionally deny him a certificate of appealability.

## BACKGROUND AND PROCEDURAL HISTORY

In March 2008, a confidential source, Victor Jimenez, began working with a Drug Enforcement Administration special agent, Ray Thompson. The investigation focused on Bernardo Favela, a resident of El Paso, Texas, suspected of trafficking in cocaine and marijuana.

During the course of the investigation, Favela asked Jimenez, a commercial truck driver, if he could deliver 15 kilograms of cocaine to a location near St. Louis, Missouri. Jimenez agreed and picked up a box at Favela's El Paso home. Jimenez delivered the box—which contained bundles of a powder with a gross weight of about 17 kilograms that field-tested positive for cocaine—to Thompson. Thompson kept the cocaine and arranged for the controlled delivery by DEA agents of "sham" cocaine to Jimenez when he arrived in Missouri. Jimenez left El Paso that night with a legitimate load in his truck and drove to Missouri. While on the road, Favela called Jimenez and told him to deliver the cocaine to "Mr. T" in Charleston, Missouri.

When Jimenez arrived in Missouri, DEA agents gave him a red duffel bag which contained bundles of the sham cocaine. Jimenez took the red duffel bag to the Cheers Travel Center in Charleston where he met "Mr. T," who was later identified as Woodrow Chapman. As DEA agents watched, Jimenez placed the red duffel bag in a blue van and received, in exchange, a black duffel bag which contained $16,000. The DEA agents contacted a local law enforcement agency and asked for a traffic stop of the blue van. A local officer observed and gave chase to the blue van down a country highway until the van ran off the side of the road and overturned. The officer took the driver of the van, who was later identified as Henry Davis, into custody near

the rollover site without incident.

A grand jury sitting in the Western District of Texas, El Paso Division, returned a multiple-count superseding indictment against Davis and others. The superseding indictment charged Davis with conspiracy to possess with the intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(ii) ("count one"), and attempted possession with the intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii) ("count six"). Davis elected to proceed to trial, and a jury found him guilty on both counts. The Court sentenced Davis to concurrent terms of 151 months' imprisonment. The Fifth Circuit Court of Appeals affirmed the judgment as to count one, but reversed the conviction as to count six based on the Court's lack of venue.[5] The Supreme Court denied Davis's petition for a writ of certiorari.[6] The instant § 2255 motion followed.

Mindful of Davis's *pro se* status,[7] the Court understands him to assert that his trial counsel provided constitutionally ineffective assistance when he failed to (1) investigate any aspect of the prosecution's case against him, (2) preform a pretrial investigation and develop exculpatory evidence, (3) object to the Court's improper jury instruction regarding venue, (4) espouse a claim that Davis's right to a speedy trial had been violated, or (5) impeach the Government's witnesses. The Court also understands him to claim that his appellate counsel

---

[5] *United States v. Thomas*, 690 F.3d 358 (5th Cir. 2012).

[6] *Davis v. United States*, 133 S.Ct. 673 (2012).

[7] *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding pro se pleadings to less stringent standards than formal pleadings drafted by lawyers); *see also Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985) (explaining liberal construction allows active interpretation of a pro se pleading to encompass any allegation which may raise a claim for federal relief).

provided constitutionally ineffective assistance when he failed to (1) argue the Government did not establish a chain of custody and could not account for five kilograms of missing cocaine, (2) assert Davis was not afforded the opportunity to confront the witnesses against him, or (3) object to the Government's improper assertions during oral argument.  Davis asks the Court to vacate his conviction or re-sentence him.  He also asks for an evidentiary hearing.

## APPLICABLE LAW

After a defendant has been convicted and exhausted or waived any right to appeal, a court is normally "entitled to presume that the defendant stands fairly and finally convicted."[8] Accordingly, "'[r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice.' "[9]  Typically, before a court will grant relief pursuant to § 2255, the movant must establish that "(1) his sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack."[10]

Generally, an ineffective-assistance-of-counsel claim presented in a § 2255 motion is analyzed under the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).[11] To prevail, a movant must show (1) that his counsel's performance was deficient in that it fell

---

[8] *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001) (citing *United States v. Frady*, 456 U.S. 152, 164 (1982)).

[9] *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (quoting *United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir. 1994)).

[10] *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995) (citations omitted).

[11] *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001).

below an objective standard of reasonableness; and (2) that the deficient performance prejudiced the defense.[12]  This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence.[13]  If the movant fails to prove one prong, it is not necessary to analyze the other.[14]

With these principles in mind, the Court will address Davis's claims.

## ANALYSIS

### A.      Ineffective Assistance of Trial Counsel

### (1)  Failure to Investigate

In his first two claims, Davis asserts his trial counsel failed to investigate any aspect of the prosecution's case against him or develop exculpatory evidence.  Specifically, Davis maintains a change in laboratory personnel and the destruction of the cocaine before trial, which his attorney did not investigate, "raises serious questions as to the integrity of the evidence and the chain of custody."[15]  He adds an inquiry into tape recordings between Jimenez and Favela, as well as video recordings at the Cheers Travel Center, which his attorney did not perform, "would have revealed that [he] did not discuss any purchase of controlled substance, undermining the

---

[12] *Strickland v. Washington*, 466 U.S. 668, 689–94 (1984).

[13] *United States v. Dovalina*, 262 F.3d 472, 474–75 (5th Cir. 2001).

[14] *See Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir.1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir.1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

[15] Mem. Supp. 5, ECF No. 347-2, Nov. 25, 2013.

government's theory of conspiracy."[16]

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."[17]  "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial."[18]

At a jury trial, when defendant contests the authenticity of proffered evidence, the Government must make a prima-facie showing of authenticity, which requires substantial evidence from which a reasonable juror could infer authenticity.[19]  If that burden is satisfied, authenticity is for the jury to determine.[20]  "Any break in the chain of custody goes to the weight of the evidence, not its admissibility."[21]

At Davis's trial, his counsel questioned the authenticity of the cocaine by objecting to the testimony of the Government's forensic chemist, Scott Wicznewski, who had re-tested the substance.[22]  After Wicznewski explained the original chemist, Michelle Curry, was "no longer

---

[16] *Id.* at 10.

[17] *Strickland v. Washington*, 466 U.S. 668, 691 (1984).

[18] *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).

[19] *United States v. Smith*, 481 F.3d 259, 265 (5th Cir. 2007) (testimony of officers and analyst in chain-of-custody sufficient to establish authenticity).

[20] *Id.*

[21] *Id.* (citation omitted).

[22] Trial Tr., vol. II, p. 83, ECF No. 276, Dec. 16, 2010.

employed" at the laboratory,[23] Davis's counsel argued "the only witness who should be here is the one who originally tested it, unless the Government can make a showing that he's not available to testify."[24]  When the Court asked why it mattered if the first or second chemist testified, an attorney for another defendant argued the missing chemist raised a "chain of custody issue."[25]  The Court noted there was "no issue on the chain of custody," and overruled the objection.[26]  Wicznewski also accounted for the missing five kilograms of cocaine, explaining "we destroy anything above that threshold [amount] for safety of the personnel who work in there.  And then also for storage also.  That's why all of it's not here today.  The rest of it's been destroyed."[27]  That trial counsel's objections the authenticity of proffered evidence were ultimately unsuccessful does not constitute ineffective assistance.[28]

Davis also suggests the fact that the audio and videotapes recorded by the DEA agents did not capture discussions between him and either Jimenez or Favela concerning the purchase of a controlled substance undermines the Government's claim that he engaged in a conspiracy.  He argues his counsel provided ineffective assistance when he failed to review the "exculpatory" tapes with him.

"To establish a conspiracy under . . . 21 U.S.C. § 846 . . . , the Government must prove beyond a reasonable doubt (1) that an agreement existed between two or more persons to violate

---

[23] *Id.* at 82.

[24] *Id.* at 83.

[25] *Id.*

[26] *Id.* at 83–84, 95.

[27] *Id* at 87.

[28] *Younqblood v. Maggio*, 696 F.2d 407, 410 (5th Cir. 1983).

the applicable narcotics law (i.e., a conspiracy existed), (2) that each alleged conspirator knew of the conspiracy and intended to join it and (3) that each alleged conspirator participated (i.e., joined) voluntarily in the conspiracy."[29]   "An express agreement is not required; a tacit, mutual agreement with common purpose, design, and understanding will suffice."[30]   "[C]ircumstantial evidence may establish the existence of a conspiracy, as well as an individual's voluntary participation in it."[31]   The jury can "infer the existence of a conspiracy from the presence, association, and concerted action of the defendant with others."[32]   Because knowledge of drug type and quantity is not an element of an offense under § 841(a)(1),[33] the Government need not prove that a co-conspirator knew the type or quantity of drugs that the conspiracy involved.[34]

Assuming that the recordings did not contain any discussions between Davis, Jimenez or Favela, the evidence of Davis's concerted action with other defendants still supports an inference that he voluntarily participated in the conspiracy.  As summarized by the Fifth Circuit:

> The jury could reasonably infer from Davis's instruction to Jimenez in the truck stop, presence . . . when the drugs were placed in the van and the money was retrieved, and action in driving the van from the lot that Davis was an active and knowing participant in a conspiracy with Thomas, Chapman, and Favela.  Further, because the drugs were fronted to Thomas, Davis, and Chapman, the evidence was sufficient for the jury to find that the relationship

[29] *United States v. Medina*, 161 F.3d 867, 872 (5th Cir. 1998).

[30] *United States v. Zamora*, 661 F.3d 200, 209 (5th Cir. 2011) (quotation marks and citation omitted).

[31] *United States v. Curtis*, 635 F.3d 704, 719 (5th Cir. 2011) (quotation marks and citation omitted).

[32] *Id*. (quotation marks and citation omitted).

[33] *United States v. Gamez–Gonzalez*, 319 F.3d 695, 699–700 (5th Cir. 2003).

[34] *United States v. Patino–Prado*, 533 F.3d 304, 309–10 (5th Cir. 2008).

with Favela was more than a buy-sell transaction.[35]

The fact that the DEA agents did not record discussions between Davis, Jimenez, and Favela does not undermine the Government's claim that Davis engaged in a conspiracy. Thus, Davis has not shown that his counsel's alleged omission with regard to the recordings prejudiced his cause. He is not entitled to § 2255 relief on this claim.

### (2) Venue

In his third claim, Davis maintains his counsel provided ineffective assistance when he failed to object to the Court's jury instruction regarding venue. In the charge, the Court explained:

> There is no requirement that the entire conspiracy take place here in the Western District of Texas. But for you to return a guilty verdict on the conspiracy charge, the government must convince you that either the agreement, or one of the overt acts, took place here in the Western District of Texas. Unlike all the other elements I have described, this is just a fact that the government only has to prove by a preponderance of the evidence. This means the government only has to convince you that it is more likely than not that a part of the conspiracy took place here.[36]

"In cases involving conspiracy offenses, venue is proper in any district where the agreement was formed or an overt act occurred."[37] Moreover, "[v]enue can be based on evidence of any single act that initiated, perpetuated, or completed the crime, and circumstantial evidence

---

[35] *United States v. Thomas*, 690 F.3d 358, 367 (5th Cir. 2012).

[36] Jury Charge 22, ECF No. 207, June 10, 2010.

[37] *United States v. Garcia Mendoza*, 587 F.3d 682, 686 (5th Cir. 2009) (quotation marks omitted).

suffices to establish venue."[38]

The Fifth Circuit determined in Davis's direct appeal that venue was proper in the Western District of Texas:

> There was evidence that after Jimenez accepted the offer to transport cocaine, Favela had to arrange the delivery in Missouri.  When Jimenez called back, Favela had arranged the exchange.  There was also evidence that Favela gave Jimenez a phone number to contact once he arrived in Missouri.  When Jimenez contacted that number, Chapman answered and discussed the logistics of the delivery at the truck stop.  Further, Chapman mentioned that he had spoken with Jimenez's "people down that way" while the two were discussing the delivery of the cocaine.  This evidence is sufficient to support an inference that Chapman, Thomas, and Davis entered into an agreement with Favela in El Paso.[39]

Since it was addressed and disposed of on appeal, the venue claim is now moot.[40] Moreover, the Court's instruction was proper.  Finally, "[a]n attorney's failure to raise a meritless argument . . . cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."[41]  Davis is not entitled to § 2255 relief on this claim.

### (3) Speedy Trial

In his fourth claim, Davis contends his attorney was ineffective for failing to allege a claim that his right to a speedy trial had been violated.  Davis notes his initial appearance

---

[38] *Id.* (citation omitted).

[39] *Thomas*, 690 F.3d at 369.

[40] *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986) (noting that it has long been "settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions").

[41] *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999).

occurred on November 3, 2009, but his jury selection did not begin until 214 days later on June 4, 2010.  Davis therefore argues "trial was set . . . over the petitioner's 70 day speedy trial right, in violation of the speedy trial Act."[42]

The Speedy Trial Act requires a criminal defendant's trial to begin within seventy days of his indictment or initial appearance.[43]  Failure to meet the deadlines may result in dismissal of the charges against him.[44]  Despite the strict deadline, the Act "recognizes that criminal cases vary widely and that there are valid reasons for greater delay in particular cases.  To provide the necessary flexibility, the Act includes a long and detailed list of periods of delay that are excluded in computing the time within which trial must start."[45]  Specifically, the Act excludes any "period of delay resulting from other proceedings concerning the defendant, including . . . delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion . . ."[46]  Further, the Act excludes any "period of delay resulting from other proceedings concerning the defendant, including . . . delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court."[47]  Additionally, the Act excludes any "period of delay resulting from a continuance granted by any judge on his own

---

[42] Mem. Supp. 18, ECF No. 347-2, Nov. 25, 2013.

[43] 18 U.S.C. § 3161(c)(1).

[44] *Id.* § 3162(a)(2).

[45] *Zedner v. United States*, 547 U.S. 489, 497 (2006) (citing 18 U.S.C. § 3161(h)).

[46] 18 U.S.C. § 3161(h)(1)(D).

[47] *Id.* § 3161(h)(1)(H).

motion or at the request of the defendant or his counsel, or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."[48]  Further, the Act excludes any "period of delay resulting from the absence or unavailability of the defendant . . . "[49]  Finally, the Act provides for the exclusion from the seventy-day speedy trial period a "reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted."[50]

In the instant case, the Speedy Trial Act clock begun on the date of Davis's initial appearance on November 3, 2009.[51]  On December 18, 2009, the Court issued an order setting Davis's cause for jury selection and trial on January 22, 2010.  The Order also specified that the time "from December 17, 2009 through January 22, 2010, is excludable time within the meaning of the Speedy Trial Act, 18 U.S.C. § 3161."[52]  On January 20, 2010, the Court entered another order granting a continuance of the jury trial until April 23, 2010.  The order also specified that the time "from January 20, 2010, through April 23, 2010, is excludable time within the meaning of the Speedy Trial Act, 18 U.S.C. § 3161."[53]  During a status conference on April 16, 2010, the

---

[48] *Id.* § 3161(h)(7)(A).

[49] *Id.* § 3161(h)(3)(A).

[50] *Id.* §3161(h)(6).

[51] *United States v. Wilkerson*, 170 F.3d 1040, 1042 (11th Cir. 1999); *United States v. Munoz-Amado*, 182 F.3d 57, 60 (1st Cir. 1999).

[52] Order, ECF No. 113, Dec. 18, 2009.

[53] Order for Continuance, ECF No. 121, Jan. 20, 2010.

attorney for one of Davis's co-defendants asked for a continuance to allow time to review discovery.  The Court granted the request and stated on the record:

> I'm going to grant the continuance.  I believe the ends of justice are served by granting the continuance.  So I will set jury selection June 4th.  Probably opening statements, you may, on behalf of the Government, have a witness available if we decide to start there.  And the trial will start June 7th for that week.[54]

The requirements of the Act are met when "a district court enters on the record . . . the necessary findings to support an ends-of-justice continuance.  The only requirements for such an order are that [it] indicate when the motion was granted, and that the reasons stated . . . be fairly understood as being those that actually motivated the court at the time it granted the continuance."[55]

Based on the foregoing, the time period from December 17, 2009, through June 4, 2010, was excludable for Speedy Trial Act purposes.  Therefore, the speedy trial clock ran from November 3, 2009, to December 18, 2009, which was a total of 43 days.  Hence, in the best case scenario for Davis, 43 of the 70-day period lapsed.  Therefore, any challenge under the Speedy Trial Act would have been unavailing.  As the Court has already noted, it is well established that the failure to make a frivolous or meritless objection cannot constitute ineffective assistance of counsel.[56]  Davis is not entitled to § 2255 relief on this claim.

**(4)  Impeach Witnesses**

---

[54] Status Conference Tr. 9, ECF No. 299, Mar. 19, 2011.

[55] *United States v. Bieganowski*, 313 F. 3d 264, 283 (5th Cir. 2002) (citing 18 U.S.C. § 3161).

[56] *United States v. Preston*, 209 F.3d 783, 785 (5th Cir. 2000).

-13-

In his final claim, Davis asserts his counsel provided ineffective assistance when he failed to impeach the Government's witnesses.  Specifically, Davis alleges Special Agents Ray Thompson and Homer Markhart made inconsistent statements during the proceedings, which rendered the trial "fundamentally unfair."[57]

> It is petitioner's assertion that the contradiction in the agents testimony undermines their credibility and that fact would have sufficiently changed the outcome of petitioner's trial.  Without a strategy and no defense of any kind which is obvious by the record in this case, counsel['s] failure to use impeaching evidence, and no other tacticful [sic] strategy render the trial so obviously unfair - that counsel['s] errors deprived the petitioner of a fair trial.[58]

The failure to impeach a witness with evidence that has "significant exculpatory value" may amount to ineffective assistance of counsel.[59]  However, due to "the distorting effects of hindsight . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."[60]  Moreover, "the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."[61]

The Government presented evidence from which the jury could infer that Davis acted in

---

[57] Mem. Supp. 22, ECF No. 347-2, Nov. 25, 2013.

[58] *Id.* at 25.

[59] *Beltran v. Cockrell*, 294 F .3d 730, 734 (5th Cir. 2002).

[60] *Strickland v. Washington*, 466 U.S. 668, 689 (1984).

[61] *Id.* at 687.

concert with Chapman, Thomas, and Favela to possess, with the intent to distribute, five kilograms or more of cocaine. Jimenez testified that he asked a man inside the Cheers Travel Center dressed in running clothes for "Mr. T," and that the man directed him to the van parked outside. A government agent who followed Jimenez into the truck stop testified that he saw Davis in the store at the same time wearing a jogging-type suit. Further, Jimenez testified that he next observed the man in the running clothes when he retrieved the duffel bag full of money. Jimenez and the government agent then saw Davis—by this time entrusted by his co-conspirators with what they believed to be fifteen kilograms of cocaine with a street value of approximately $250,000—drive the blue van away from the truck stop. Finally, after a high-speed chase which ended when the van overturned, law enforcement officers captured Davis.

Considering the overwhelming evidence against Davis, impeaching the purportedly inconsistent testimony of Thompson and Markhart would not have changed the outcome of the trial. Further, not impeaching them under the circumstances might have been sound trial strategy. Davis has not met his burden of showing his counsel provided constitutionally ineffective assistance. He is not entitled to relief on this claim.

### B.  Ineffective Assistance of Appellate Counsel

Davis also claims his appellate counsel provided constitutionally ineffective assistance when he failed to (1) argue the Government did not establish a chain of custody and could not account for five kilograms of missing cocaine, (2) assert Davis was not afforded the opportunity to confront the witnesses against him, or (3) object to the Government's improper assertions during oral argument. Instead, his appellate counsel raised the following five issues in his merits brief:

1.  The government failed to establish that venue was proper in the Western District of Texas and, therefore, the trial court erred in refusing to grant Davis' Rule 29 motion for acquittal based on lack of venue.

2.  There was no or insufficient evidence at trial to prove that Davis entered into a conspiracy with any other defendant to possess or distribute cocaine.

3.  Because of a fundamental inconsistency in the jury verdict, Davis should have been acquitted or, in the alternative, should not have been found guilty of possession of over five kilograms of cocaine.

4.  The court erred in attributing 15 kilograms of cocaine to Davis in establishing his Sentencing Guideline base offense score.

5.  The trial court erred in failing to grant Davis a two-level decrease for his minor role in the offense.[62]

The two-prong *Strickland* test applies to claims of ineffective assistance of counsel by both trial and appellate counsel.[63]  However, "appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal."[64]  In order to prove ineffective assistance, the defendant must demonstrate that "a particular nonfrivolous issue was clearly stronger than issues that counsel did present."[65]  Further, "[c]ounsel cannot be deficient for failing to press a frivolous point."[66]  Finally, "[w]hen a claim of ineffective assistance of counsel is premised on counsel's

---

[62] Br. Def.-Appellant Henry Davis 9, *United States v. Davis*, No. 10-50982, 2011 WL 3464510 (5th Cir. filed Aug. 1, 2011).

[63] *Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001).

[64] *Smith v. Robbins*, 528 U.S. 259, 288 (2000).

[65] *Id.*

[66] *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995).

failure to raise an issue on appeal, 'the prejudice prong first requires a showing that [the appellate court] would have afforded relief on appeal.' "[67]

In an affidavit, Davis's appellate explains his reasoning for not raising claims concerning the chain of custody, confrontation, and the Government's oral argument:

> Chain of Custody:  At trial, as Mr. Davis points out, his attorney joined in a general objection (there were multiple defendants at trial) to the government's failure to establish the chain of custody for particular evidence (government's exhibits 38 and 39), one attorney stating that "I think there's a confusion" about the evidence.  . . . I recall examining that confusion concerning the evidence, or its labeling, and found that the trial court committed no abuse of discretion or clear error in admitting the evidence and, therefore, there was no viable or reasonable issue that could be argued on appeal concerning chain of custody.

> . . . .

> Confrontation Rights:  In his motion, Mr. Davis alleges that both the trial counsel and I failed to argue that his right to confront witnesses had been violated; however, it is unclear how that manifests itself in the parts of the reporter's record and evidence he cites.  From what I can ascertain, Mr. Davis alleges that a particular laboratory report of Michelle Curry was not contained in state's exhibit 39, or that trial counsel did not object to Ms. Curry's report because it did not document that a portion of the seized cocaine was destroyed.  Mr. Davis goes on to assert that his right to confrontation was violated when a substitute chemist did not perform the lab test on the 15 kilograms of cocaine seized, the proper person did not sign the report, and the purity level of hydrochloride in the tested drug proved that it was not, in fact, cocaine.

>> In my recollection of the case, the seized drugs were duly tested as cocaine, the results certified, and the proper documentation and witness testimony supporting that documentation was in evidence.  I did not find any evidence of the trial court abusing its discretion or committing clear error when it allowed the subject reports into evidence.  Further, if trial counsel did not preserve error (if any) on a particular issue, a much more stringent standard of review of that issue would be required to pass appellate muster and, again, nothing in the record which would support a viable issue on appeal concerning an unpreserved error.

---

[67] *United States v. Reinhart*, 357 F.3d 521, 530 (5th Cir. 2004) (quoting *United States v. Phillips*, 210 F.3d 345, 350 n.7 (5th Cir. 2000)).

> Prosecutorial Misconduct: Mr. Davis alleges in his motion that I was ineffective for failure to object to prosecutorial misconduct and improper arguments asserted for the first time on appeal during oral argument. He argues, to this point, that "if the government cannot prove the cocaine was fronted on a buyer-seller theory, then it cannot prove conspiracy."
>
> To begin, oral arguments on appeal are rarely reduced to print, and I do not possess, nor do I think Mr. Davis possesses, transcripts of the oral argument in this case. Further, I saw nothing in the trial record, or in my observation of the government's appellate counsel during oral argument, that would remotely suggest that the United States Attorney's Office had engaged in any misconduct at trial or on appeal. Further, Mr. Davis appears to be arguing whether a simple buyer-seller transaction can prove the existence of a conspiracy. . . . [O]ne of the issues in my appellate brief addressed this very argument: that a conspiracy is an agreement of parties having a shared objective or design to commit the crime, and that a single drug deal does not automatically make the buyer and seller co-conspirators. This issue, in fact, was the centerpiece of the brief and one in which the Fifth Circuit devoted considerable discussion to before deciding that Mr. Davis was, indeed, an active member of a conspiracy.[68]

Davis's appellate counsel has explained, with reasonable detail, why he did not raise the issues Davis claims he should have raised on appeal. As noted above, Davis's appellate counsel was not required to raise every non-frivolous ground on appeal. His counsel addressed those issues that he believed had the best chance of success. Davis has not shown that his counsel's decision not to raise his specified issues on appeal fell below an objective standard of reasonableness, which required counsel "to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful."[69] Davis has not shown his issues were clearly stronger than issues that his counsel did present. Davis has not shown the Fifth Circuit would have afforded him relief on his claims. Davis has not shown his appellate counsel

---

[68] Gov't Resp. Mot. Vacate, Ex. B (Aff. of John D. Gates), pp. 2–4, ECF No 356-3, Feb. 3, 2014.

[69] *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999).

afforded him constitutionally ineffective assistance. Davis is, therefore, not entitled to § 2255 relief on these claims.

## EVIDENTIARY HEARING

A motion brought under § 2255 may be denied without a hearing if the motion, files, and records of the case conclusively show that the defendant is not entitled to relief.[70]  The record is adequate to dispose fully and fairly of Davis's claims. The Court need inquire no further on collateral review and an evidentiary hearing is not necessary.

## CERTIFICATE OF APPEALABILITY

A petitioner may not appeal a final order in a habeas corpus proceeding "[u]nless a circuit justice or judge issues a certificate of appealability."[71]  Further, appellate review of a habeas petition is limited to the issues on which a certificate of appealability is granted.[72]  In other words, a certificate of appealability is granted or denied on an issue-by-issue basis, thereby limiting appellate review solely to those issues on which a certificate of appealability is granted.[73]

---

[70] *See United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992) (per curiam) (holding that there was no abuse of discretion in denying a § 2255 motion without a hearing where the movant's assertions of ineffective assistance were wholly conclusory in nature and refuted by reference to the record itself).

[71] 28 U.S.C. § 2253(c)(1)(B) (2012).

[72] *See Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997) (holding that, in regard to the denial of relief in habeas corpus actions, the scope of appellate review is limited to the issues on which a certificate of appealability is granted).

[73] *See* 28 U.S.C. § 2253(c)(3) (setting forth the narrow scope of appellate review in habeas corpus matters); *see also Lackey*, 116 F.3d at 151 (holding that a certificate of appealability is granted on an issue-by-issue basis, thereby limiting appellate review to those issues); *but see United States v. Kimler*, 150 F.3d 429, 431 n.1 (5th Cir. 1998) ("We have decided, however, that the monolithic nature of [Federal Rule of Appellate Procedure] Rule 22(b) in conjunction with Congress's mandate for issue specificity on collateral review embodied

Although Davis has not yet filed a notice of appeal, this Court nonetheless must address whether he is entitled to a certificate of appealability.[74]

A certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."[75]  In cases where a district court rejects a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[76]  To warrant a grant of the certificate as to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."[77]  Here, Davis's motion fails because he does not identify a transgression of his constitutional rights or allege an injury he could not have raised on direct appeal that would, if condoned, result in a complete miscarriage of justice.  Accordingly, the Court finds that it should deny Davis a certificate of appealability.

---

in 28 U.S.C. § 2253(c)(3) requires a more express request.  In order to obtain appellate review of the issues the district court refused to certify, the petitioner must first make the threshold substantial showing of the denial of a constitutional right. *See* 28 U.S.C. 2253(c)(2).  Only after clearing this hurdle may the petitioner proceed to brief and we review the merits of the rejected issues.").

[74] *See* 28 U.S.C. foll. § 2255 Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.").

[75] 28 U.S.C. § 2253(c)(2).

[76] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (applying *Slack* to a certificate of appealability determination in the context of § 2255 proceedings).

[77] *Slack*, 529 U.S. at 484.

## CONCLUSION AND ORDERS

For the reasons stated, the Court concludes that it should deny Davis's motion and dismiss his civil cause. The Court further concludes that Davis is not entitled to a certificate of appealability. Accordingly, the Court enters the following orders:

**IT IS ORDERED** that Davis's corrected motion under 28 U.S.C. § 2255 to vacate, set aside, or correct a sentence (ECF No. 347-1) is **DENIED**, and his civil cause is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Davis is **DENIED** a certificate of appealability.

**IT IS ALSO ORDERED** that all pending motions are **DENIED AS MOOT**.

**IT IS FINALLY ORDERED** that the Clerk shall **CLOSE** this case.

**SO ORDERED.**

**SIGNED** this 17th day of April 2015.

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE